ADAMS HOUSE HEALTH CARE, et al., Appellants,

v.

Louis W. SULLIVAN, M.D.

No. 89–5018.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 12, 1989.

Decided Feb. 6, 1990.

Robert J. Aamoth, with whom Eugene Tillman, Washington, D.C., was on the brief, for appellants.

Donald G. Kosin, Jr., U.S. Dept. of Health and Human Services, with whom Jay B. Stephens, U.S. Atty., Michael J. Astrue, Gen. Counsel, and Darrel Grinstead, Chief Counsel, Health Care Financing Admin., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In this case, the appellants, eighty-two skilled nursing facilities that provide Medicare services ("Providers"), seek reimbursement under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395ccc (1982 & Supp. V 1987), for services furnished to Medicare beneficiaries. The Secretary of Health and Human Services ("Secretary") ruled that, pursuant to existing agency regulations, the "interest offset" rule, see 42 C.F.R. § 413.153 (1988), and the "equity capital exclusion" rule, see 42 C.F.R. § 413.157 (1988), should be applied to funds invested by the Providers during fiscal year 1981. The application of these two rules had the effect of disallowing certain costs for which the Providers claim entitlement to reimbursement. The Providers petitioned for review in District Court, claiming that the Secretary's action was taken without statutory authority and/or that it was arbitrary and capricious and thus should be set aside. The District Court entered judgment for the Secretary. *See Adams House Health Care v. Bowen,* Civ. Action No. 85–2739 (D.D.C. Dec. 6, 1988) (Johnson, J.), *reprinted in* Joint Appendix ("J.A.") 75. We affirm.

## I. BACKGROUND

The material facts in this case are undisputed. During fiscal year 1981, the Providers [1] collectively invested $7.5 million in certificates of deposit, treasury bills, and other similar notes, for a period exceeding six months. *See Adams House,* slip op. at 2, *reprinted in* J.A. 76. These investments were found by the Secretary to be subject to two rules under the regulations issued by the Department of Health and Human Services ("HHS") pursuant to the Medicare Act. The first, the "interest offset rule," requires a reduction of otherwise reimbursable interest expenses. Under the Medicare Act, the Providers are entitled to payment of the lesser of the "reasonable cost" or the "customary charges" for services they furnish to Medicare beneficiaries. *See* 42 U.S.C. § 1395f(b)(1) (1982 & Supp. V 1987). The statute defines "reasonable cost" as the "cost actually incurred, excluding ... any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A) (1982 & Supp. V 1987). Agency regulations provide that HHS will reimburse a provider for "[n]ecessary and proper interest" expenses, 42 C.F.R. § 413.153(a)(1), on loans that are "made for a purpose reasonably related to patient care," *id.* § 413.153(b)(2)(ii). To be "necessary," the interest must first be reduced by investment income. *Id.* § 413.153(b)(2)(iii). In preparing the 1981 Medicare cost reports, the Providers complied with Medicare regulations and reduced their claimed interest expenses by income earned on the $7.5 million investment.

The second rule, the "equity capital exclusion" rule, requires the exclusion of certain equity capital investments from pay-

---

1. The Providers are for-profit nursing homes; they are owned and operated by Hillhaven Corporation and were certified as providers of services under the Medicare program at all times relevant to this suit.

ment by HHS of a "reasonable return on equity capital." 42 C.F.R. § 413.157(b); Health Care Financing Administration, Provider Reimbursement Manual, Publication 15 § 1218.2, 1 Medicare & Medicaid Guide (CCH) ¶ 5810 (Nov. 1968) [hereinafter HCFA Pub. 15], *reprinted in* Brief of Appellee Addendum at 32. Proprietary facilities are generally entitled to a reasonable return on equity capital invested in the facility and used in furnishing care to Medicare beneficiaries. *See* 42 U.S.C. § 1395x(v)(1)(B) (1982 & Supp. V 1987); 42 C.F.R. § 413.157(b). However, a provider must exclude equity capital used for purposes other than patient care from the equity capital base used to determine the reasonable return due. *See* 42 C.F.R. § 413.157(c). Under the Secretary's interpretation of this rule, "[a]ny portion of the provider's general funds or operating funds invested in [income producing activities that are not related to patient care] for more than six consecutive months is not includable in the provider's equity capital." HCFA Pub. 15 § 1218.2. In accordance with this interpretation of the rule, the Providers excluded the $7.5 million investment from their equity capital base in their 1981 Medicare cost report. In short, the Providers applied the interest offset and equity capital exclusion rules to the $7.5 million investment in precisely the manner the Secretary contends that the statute and applicable regulations require.

After receiving their final notice of program reimbursement for the 1981 cost year, however, the Providers filed an appeal with the Provider Reimbursement Review Board ("PRRB") challenging the simultaneous application of the two rules to their investment. Following a prolonged jurisdictional dispute, in which the Supreme Court ultimately held that the PRRB must entertain the Providers' complaint, *see Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 108 S.Ct. 1255, 1260, 99 L.Ed.2d 460 (1988), the PRRB rejected the Providers' claims, ruling that the 1981 cost reports were proper as submitted and accepted. *See Hillhaven, Inc. v. Aetna*, 85–D38 P.R. R.B. Case No. 83–63G(R) at 5 (Apr. 23, 1985), *reprinted in* J.A. 14. In reviewing

the PRRB's decision, the Health Care Financing Administration ("HCFA") Administrator also concluded that the Secretary properly applied the two rules simultaneously. *See Hillhaven, Inc. v. Aetna*, HCFA Administrator Review of PRRB Hearing Decision No. 85–D38 at 3 (June 19, 1985), *reprinted in* J.A. 21.

Upon petition for review, the District Court rejected the Providers' claim that the two rules are mutually exclusive anti-borrowing rules. *See Adams House*, slip op. at 11, *reprinted in* J.A. 85. The District Court thus upheld the PRRB's decision. The District Court reasoned that the two rules as applied to the Providers' $7.5 million investment have distinct purposes: "one to avoid reimbursement of unnecessary interest expense, and the other to exclude funds not invested in patient care from the calculation of plaintiffs' return on equity." *Id.* The District Court concluded that the "Secretary's simultaneous application of the interest offset rule and equity exclusion rule was appropriate, and, in any case, was clearly 'within the range of reasonable meanings that the words of the regulation admit.'" *Id.* (quoting *Psychiatric Institute of Washington, D.C., Inc. v. Schweiker*, 669 F.2d 812, 814 (D.C.Cir. 1981)). The Providers appeal.

## II. ANALYSIS

The Providers claim that the Secretary violated the statutory obligation to reimburse health care providers for all reasonable costs of furnishing covered Medicare services when the agency applied both the interest offset rule and the equity capital exclusion rule to the $7.5 million which the Providers collectively invested. *See* Brief of Appellants at 3; *see also* 42 U.S.C. §§ 1395f(b), 1395x(v). The Providers do not challenge the validity of the regulations, but only their simultaneous application.

### A. *Review Under* Chevron

 It is obvious that the Secretary has the *authority* to define reasonable costs. Congress explicitly delegated to the Secre-

tary the responsibility to promulgate regulations "establishing the method or methods to be used, and the items to be included, in determining [the reasonable] costs for various types or classes of institutions, agencies, and services." 42 U.S.C. § 1395x(v)(1)(A). Congress did not speak directly to the precise question at issue in the instant case regarding the meaning of "reasonable cost," and the Secretary's simultaneous application of the rules does not conflict with the statute. *See Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). In short, the Providers have not pointed to any provision in the statute which suggests that the Secretary lacked the authority to define reasonable costs as he did.

B. *Review Under* State Farm

The only other possible basis for questioning the Secretary's simultaneous application of the two rules is pursuant to the "arbitrary and capricious" standard of review under the Administrative Procedure Act.[2] *See* 42 U.S.C. § 1395oo(f)(1) (1982 & Supp. V 1987) (explicitly incorporating the Administrative Procedure Act's standard of review into the Medicare Act). That is, in reviewing the Secretary's explanation for applying the rules simultaneously, we must consider whether the decision " 'was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974) ); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). We can find no basis for overturning the Secretary's judgment on these terms.

■ It is clear that each of the regulations on its face supports the Secretary's decision. The regulation governing Medicare reimbursement of interest expenses expressly provides that, excluding a few exceptions not apposite here, a provider's reimbursable interest expense must be "[r]educed by investment income." 42 C.F.R. § 413.153(b)(2)(iii). There is no dispute that the $7.5 million was invested and earned income. On its face, the regulation requires the Secretary to offset the income earned on the $7.5 million against any interest on funds borrowed for a purpose reasonably related to patient care. *See id.* § 413.153.

■ Similarly, the Medicare Act specifies that equity capital on which returns must be paid includes "necessary working capital, invested in the facility and used in the furnishing of [extended care] services." 42 U.S.C. § 1395x(v)(1)(B). The Secretary implemented Congress' mandate to pay a return on equity capital in 42 C.F.R. § 413.157. The general rule provides that "[a] reasonable return on equity capital *invested and used in the provision of patient care* is paid as an allowance in addition to the reasonable cost of covered services furnished to beneficiaries by proprietary providers." *Id.* § 413.157(b) (emphasis added). Accordingly, HHS pays proprietary providers such as the appellants a return on investments in plant, property, and equipment related to patient care, and on their net working capital maintained for patient care activities. *See* 42 C.F.R. § 413.157(c). The Secretary interpreted this regulation in the Provider Reimbursement Manual to require that funds "diverted to income producing activities ... not related to patient care ... for more than six consecutive months is not includable in the provider's equity capital." *See* HCFA Pub. 15 § 1218.2.[3] There is no

---

**2.** Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706 (1988), provides:

The reviewing court shall ...

(2) hold unlawful and set aside agency action, findings and conclusions found to be—

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**3.** Section 1218.2 provides, in full:

Invested funds are funds diverted to income producing activities which are not related to

question that the $7.5 million was invested in income producing activities not related to patient care for more than six consecutive months.

■ The Providers contend that application of the interest offset rule to the income earned on the Providers' investment transforms its investment into money used for patient care, and hence makes it deserving of a return on equity capital. *See* Brief of Appellants at 14. According to the Providers, "the interest offset rule creates the fiction that the provider used the investment funds to furnish Medicare services" and the "Secretary cannot be permitted to ignore that fiction in determining what funds are related to Medicare patient care for purposes of calculating the Medicare return on equity capital." *Id.* We find no support for this view in the statute or the regulations. Regulation 42 C.F.R. § 413.157(c) defines equity capital.[4] The Secretary's determination that the Providers' investment does not fall within the scope of this definition certainly cannot be said to constitute a "clear error of judgment." *See State Farm*, 463 U.S. at 43, 103 S.Ct. at 2856.[5]

■ Nor do we find that the Secretary failed to articulate a satisfactory explanation for applying the rules simultaneously. The Secretary explained that the rules have distinct purposes. The interest offset rule is intended to avoid reimbursement of unnecessary interest expenses; the purpose of the equity capital exclusion rule is to provide an incentive for providers to commit funds to providing Medicare service by providing a return, but only on equity capital invested in patient care. *See Adams House*, slip op. at 11, *reprinted in* J.A. 85. This distinction is supported by the statute and its legislative history. *See, e.g., American Medical Int'l, Inc. v. Secretary of Health, Educ. & Welfare*, 466 F.Supp. 605, 613–14 (D.D.C.1979) (discussing purpose and legislative history of the return on equity capital provision), *aff'd*, 677 F.2d 118 (D.C.Cir.1981) (*per curiam*).

Simultaneous application of the rules serves the legitimate ends of encouraging providers to invest funds in Medicare services and of restricting interest reimbursements to only necessary ones. For example, if only the equity capital exclusion rule applied, a provider that invested funds in certificates of deposit and borrowed funds to cover Medicare expenses would be enti-

---

patient care. Any portion of the provider's general funds or operating funds invested in such activities for more than six consecutive months is not includable in the provider's equity capital. For example, funds deposited in a savings account or invested in securities or loans are considered "invested funds." Further, if the time period covered by such fund investment is interrupted by a number of withdrawals and redeposits so that the effect of such transactions is that funds are invested for more than six consecutive months, these invested funds are not included in equity capital.

4. This regulation provides, in relevant part, that For purposes of computing the allowable return, the provider's equity capital means—
  (i) The provider's investment in plant, property, and equipment related to patient care (net of depreciation) and funds deposited by a provider who leases plant, property, or equipment related to patient care and is required by the terms of the lease to deposit such funds (net of noncurrent debt related to such investment or deposited funds); and
  (ii) Net working capital maintained for necessary and proper operation of patient care activities. However, debt representing loans

from partners, stockholders, or related organizations on which interest payments would be allowable as costs but for the provisions of § 413.153(b)(3)(ii), is not subtracted in computing the amount of equity capital in order that the proceeds from such loans be treated as part of the provider's equity capital.
42 C.F.R. § 413.157(c)(1).

5. We also reject the Providers' contention that the Secretary's simultaneous application of the rules is inconsistent with "the only other reported PRRB case on this issue." *See* Brief of Appellants at 20 (citing *South Oak Cliff Medical Center, Inc. v. Blue Cross Ass'n*, [1980-81 Transfer Binder], Medicare & Medicaid Guide (CCH) ¶ 30,799 (P.R.R.B. Oct. 31, 1980), *reprinted in* Brief of Appellant Addendum at 33). *South Oak* involved the application of the interest offset and equity exclusion rules to *short-term* (less than six months) investments of the sole stockholder and funds borrowed personally by the sole stockholder. *See* [1980-81 Transfer Binder], Medicare & Medicaid Guide (CCH) ¶ 30,799; *see also Adams House*, slip op. at 14, *reprinted in* J.A. 88. Both the short-term nature of these investments and the relationship of the borrower/investor to the provider render the decision in *South Oak* inapposite in the instant case.

tled to credit for interest on the loan—without any offset. Thus, in addition to receiving the interest for the loan, the provider would retain the income earned on its investment. Such a scheme would clearly defeat the aims of the interest offset provision—to reimburse only necessary interest expenses. Similarly, if the interest offset provision alone applied, a provider would receive a return on equity for funds invested—essentially negating the effect of the interest offset provision. That is, the HHS would need to pay a return on equity capital for investment funds every time it offset interest against income from investments.[6]

The Providers expended considerable effort in presenting hypotheticals, which they claim show conclusively that they are being penalized for their investment strategy. In our view, their hypotheticals at best only confuse the issue. It is undisputed that these two regulations result in different treatment for providers depending upon their investment and borrowing decisions. We, nonetheless, conclude that it is reasonable and well within the Medicare statute's purpose to provide a built-in incentive for those providers who choose to invest funds in patient care services, rather than in outside investments, as the Providers did in this case. The Providers' hypotheticals do no more than demonstrate this result.

There may be circumstances in which this two-fold requirement impedes financial efficiency. However, our role is not to substitute our judgment for that of the Secretary. *See, e.g. State Farm,* 463 U.S. at 43, 103 S.Ct. at 2856. Where the language of the regulations provided for no exceptions in the application of the rules and the Secretary has articulated a reasoned basis for applying them simultaneously, we cannot agree with the Providers' assertion that simultaneous application of the rules is "inherently arbitrary." *See* Brief of Appellants at 11.

Moreover, this court has previously determined that a provider is "not entitled to an individual determination of a 'reasonable' return on equity." *See Humana Inc. v. Heckler,* 758 F.2d 696, 703 (D.C.Cir. 1985), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). The return on equity capital provision permits a "single, universal" rate of return on equity capital as defined by regulation and interpreted by the Secretary and it " 'constitutes the *sole* exception to the basic Medicare principle that reimbursement be limited to those costs actually incurred in providing patient care services.' " *Id.* (emphasis in original) (quoting *AMI,* 466 F.Supp. at 613); *see also AMI,* 466 F.Supp. at 614. This court determined in *Humana* that "a proprietary hospital's rate of return can be claimed only under the extended care facility provision and not under the reasonable cost provision of the Act." 758 F.2d at 703. The *Humana* court agreed with the Secretary's interpretation that under section 42 U.S.C. § 1395x(v)(1)(B) "HHS lacks statutory authority for individualized rate-making on a hospital-by-hospital basis." *Id.* We find the Secretary's decision not to make a case-by-case assessment of the effects of the simultaneous application of the two rules consistent with the statute, regulations and precedent.

We also find no merit in the Providers' assertion that the Secretary's application of the rules violates "the cardinal statutory requirement that providers receive reimbursement for the reasonable costs of furnishing Medicare services to beneficiaries." Brief of Appellants at 15. The Secretary has promulgated regulations which make clear that interest incurred unnecessarily is not a reasonable cost; nor is return on equity for funds *not* devoted to providing Medicare patient care a "reasonable cost" of providing service. The Providers have not indicated any reasonable costs of providing Medicare services, incurred neces-

---

**6.** This court's decision in *Humana, Inc. v. Heckler,* 758 F.2d 696 (D.C.Cir.1985), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986), also supports the Secretary's simultaneous application of the rules. In *Humana,* the provider asserted "that if income taxes are not reim-

bursed as part of 'reasonable costs,' the same tax liabilities must not be included in the calculation of equity capital" and, hence, that it would be "entitled to a return on equity capital for the funds used to pay income taxes." 758 F.2d at 702. The court rejected this argument. *See id.*

sarily, for which they have not been compensated.

In *American Medical International, Inc. v. Secretary of Health, Education & Welfare,* 466 F.Supp. at 612–13, *aff'd,* 677 F.2d 118, the district court drew, and this court affirmed, a distinction between reimbursable and nonreimbursable costs based on the purpose they served:

> A crucial distinction must be drawn between costs which are necessary for the maintenance of a corporate structure and those which are necessary for providing medical services. Stock maintenance costs are necessary for a corporation to exist, but medical services can be provided without the corporate form.

*Id.* We reaffirmed this distinction in *Humana. See* 758 F.2d at 700, 701 (concluding that stock maintenance costs and income tax liability are not necessary costs of rendering medical care). We remain unpersuaded (1) that a return on equity capital invested in certificates of deposit, treasury bills and other similar notes, or (2) that interest on a loan incurred to provide Medicare service where the provider chose to invest its capital for a period exceeding six months, constitute necessary costs of rendering medical care.[7]

### III. CONCLUSION

We find no error in the Secretary's simultaneous application of the interest offset rule and the equity capital exclusion rule to the appellants' $7.5 million investment. The Secretary's application of the rules to the invested funds evinces no arbitrariness, capriciousness, abuse of discretion or conflict with congressional intent. The simultaneous application of the rules to the Providers' investment comes soundly within the Secretary's authority to define the reasonable costs of providing Medicare services for which the HHS must reim-

burse providers. The decision of the District Court is therefore

*Affirmed.*

---

7. We also find unavailing the Providers' assertion that the simultaneous application of the rules "violated the statutory proscription against forcing non-Medicare patients to subsidize the Medicare program." Brief of Appellants at 15 n. 7 (citing 42 U.S.C. § 1395x(v)(1)(A)). "The

prohibition against cross-subsidization applies solely to costs relating to patient care." *Humana,* 758 F.2d at 700. Since the costs involved in the instant case are not reasonable and necessary costs of patient care, no cost-shifting has occurred. *See id.* at 700, 701–02.