Alberta NOLAND, Penny Knippenberg, Plaintiffs,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 90–2968.

United States District Court, District of Columbia.

Jan. 24, 1992.

Patricia Baggs Nemore, Washington, D.C., for plaintiffs.

Edith S. Marshall, David R. Smith, Washington, D.C., for defendant.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This Medicaid case involves the complex question of how the statutory provision known as the "Pickle Amendment" is to be construed in states that are governed by § 209(b) of the Medicaid Act. Plaintiffs challenge a regulation promulgated by the Secretary of Health and Human Services ("the Secretary") as contrary to the statutory authority set out in the Pickle Amendment, 42 U.S.C. § 1396a (note) (1988), and in section 303(e) of the Medicare Catastrophic Coverage Act, 42 U.S.C. § 1396a(r)(2) (1988). They also claim that the regulation in dispute is arbitrary and capricious. Pending before the Court are the parties' cross-motions for summary judgment. There are no disputes of material fact. For the reasons outlined below, the Court will grant defendant's motion for summary judgment and deny plaintiffs' motion for summary judgment.

## BACKGROUND

The Medicaid program was established in 1965 under title XIX of the Social Security Act; it offers federal financial assistance to states which choose to provide medical care to those who cannot afford it. 42 U.S.C. §§ 1396–1397 (1988). Originally, Medicaid required participating states to provide medical assistance to persons who received cash payments under one of four welfare programs established by the Social Security Act. In 1972, Congress decided to restructure three of these welfare programs, replacing them with a new government assistance program called Supplemental Security Income ("SSI"). Under SSI, the federal government displaced the states by assuming responsibility for both funding payments and setting standards of need. As a result of more generous federal eligibility standards for SSI, the number

of individuals eligible for SSI assistance increased significantly in some states.

The expansion of welfare assistance under SSI threatened to increase Medicaid obligations for some states, due to the existing requirement that all recipients of categorical welfare assistance, including SSI, were entitled to Medicaid. Because Congress feared that some states might withdraw from the Medicaid program altogether as a result of the expanded SSI eligibility, it enacted what has come to be known as the "§ 209(b) option." 42 U.S.C. § 1396a(f) (1988). Under § 209(b), states could elect not to provide Medicaid automatically to persons who receive SSI, but instead provide Medicaid only to those individuals who would have been eligible under criteria as restrictive as those contained in the state's Medicaid plan in effect on January 1, 1972. States which provide Medicaid to all SSI recipients are known as "SSI states"; states that offer Medicaid only to those who meet the state's own eligibility standards and methodologies are known as "§ 209(b) states." Ohio, the state in which plaintiffs live, is a § 209(b) state.

Section 209(b) also includes a mandatory "spenddown" provision, which allows individuals to receive Medicaid, notwithstanding the fact that their income is higher than the state eligibility standard, if they incur sufficient medical expenses.

In 1976, Congress confronted a problem arising from the interaction between SSI, Medicaid, and the Old Age Survivors and Disability Insurance ("OASDI") program. The latter is what is popularly known as "Social Security." See 42 U.S.C. §§ 401–433 (1988). Recipients of OASDI payments receive annual cost of living adjustments ("OASDI COLAs") to their Social Security checks. In some cases, these COLAs increased the beneficiaries' income sufficiently to disqualify them for SSI, causing them to lose, not only SSI benefits, but also Medicaid benefits, in those states which automatically link SSI eligibility to Medicaid eligibility. To redress the problem of the negative effects that COLAs were having on Medicaid eligibility, Congress enacted the "Pickle Amendment" ("the Amendment").

The Pickle Amendment states, in pertinent part:

[T]here is hereby imposed the requirement (and each such State plan shall be deemed to require) that medical assistance under such plan shall be provided to any individual, for any month after June 1977 for which such individual is entitled to a monthly insurance benefit under [the Social Security Act] but is not eligible for benefits under [SSI] . . ., in like manner and subject to the same terms and conditions as are applicable under such State plan in the case of individuals who are eligible for and receiving benefits under [SSI] for such month, if for such month such individual would be (or could become) eligible for benefits under [SSI] except for amounts of income received by such individual and his spouse (if any) which are attributable to increase in the level of monthly insurance benefits . . . .

42 U.S.C. § 1396a (note) (1988). The interpretation of the convoluted wording of this amendment is what is at issue in this case.

Defendant argues that the Pickle Amendment requires no more than that SSI recipients and individuals who would be SSI recipients but for OASDI COLAs be treated alike for the purposes of granting Medicaid. In those states which automatically link SSI eligibility to Medicaid eligibility, the Pickle Amendment thereby ensures that recipients of OASDI COLAs will not lose Medicaid benefits as a result of their increase in income. However, in § 209(b) states, there is no automatic link between SSI eligibility and Medicaid eligibility. The Secretary of Health and Human Services has interpreted the Pickle Amendment to allow those § 209(b) states with more restrictive Medicaid eligibility requirements than those under SSI to consider COLAs in computing income for the purposes of determining that Medicaid eligibility:

If the [state] agency adopts more restrictive eligibility requirements than those under SSI, it must provide Medicaid to individuals specified in paragraph (a) of this section on the same basis as Medicaid is provided to individuals continuing to receive SSI or State supple-

ments.... In determining the amount of his or her income, the agency *may* deduct the cost-of-living increases paid under [OASDI] ... up to the amount that made him or her ineligible for SSI. 42 C.F.R. § 435.135(c) (1990) (emphasis added). Thus, a § 209(b) state would be required by the Pickle Amendment to disregard COLAs in determining which individuals should be treated as if they were SSI-eligible, but the state would be allowed to include them in determining Medicaid eligibility, since in § 209(b) states, SSI eligibility does not automatically confer Medicaid eligibility.

Plaintiffs argue that the Pickle Amendment requires § 209(b) states to disregard COLAs at all levels: at the level of income computation for purposes of SSI eligibility *and* at the level of income computation for purposes of Medicaid eligibility. Plaintiffs are residents of the state of Ohio, a § 209(b) state which has chosen, pursuant to the Secretary's regulation, to include OASDI COLAs in determining eligibility for Medicaid benefits. Both plaintiffs currently receive Social Security disability benefits and annual COLAs to those benefits, as well as SSI benefits. Because of Ohio's policy of including COLAs as income, the spenddown amounts of medical expenses which plaintiffs are required to incur before they are eligible for Medicaid are significantly greater than they would be if these COLAs were disregarded.

Plaintiffs claim that the Secretary's regulation also is contrary to section 303(e) of the Medicare Catastrophic Coverage Act. This section provides, in pertinent part:

(2)(A) The methodology to be employed in determining income and resource eligibility for individuals [in § 209(b) states] may be less restrictive, and shall be no more restrictive, than the methodology (i) in the case of groups consisting of aged, blind, or disabled individuals, under the Supplemental Security Income program ....

Section 303(e)(5)(C) of Medicare Catastrophic Coverage Act of 1988, Pub.L. No. 100–360, *codified at* 42 U.S.C. § 1396a(r)(2) (1988). Plaintiffs argue that the disregard of OASDI COLAs under the Pickle Amendment is an "income methodology" within the meaning of § 1396a(r)(2), and that therefore § 209(b) states are obligated to disregard these COLAs in determining Medicaid eligibility.

Finally, plaintiffs challenge the Secretary's regulation as arbitrary and capricious, in violation of the Administrative Procedure Act.

## DISCUSSION

### A. Is the Regulation Contrary to Statutory Authority?

■ In reviewing an agency's construction of the statute which it administers, the Court must follow the standard set out in *Chevron U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the Court must inquire whether Congress has spoken to the question at issue. *Id.* at 842, 104 S.Ct. at 2781. In determining congressional intent, the Court must examine "the particular statutory language at issue, as well as the language and design of the statute as a whole," *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988); the Court may also employ traditional tools of statutory construction, including legislative history, if the language of the statute is unclear, *Chemical Mfrs. Ass'n v. United States EPA,* 919 F.2d 158, 162 (D.C.Cir. 1990). If Congress' intent is clear, the Court must give it effect. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. If, however, the statute is silent or ambiguous as to the question at issue, the Court must defer to the agency's interpretation of the statute, as long as it is reasonable. *Id.* at 843, 104 S.Ct. at 2781; *Chemical Mfrs. Ass'n,* 919 F.2d at 163.[1]

---

1. Plaintiffs argue that a different standard of review should apply to this case. They insist that, when a court faces "a pure question of statutory construction," as the Court does here, it need not defer to the agency's interpretation, even if the statutory provision admits of some

ambiguity. Plaintiffs cite *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987), *Union of Concerned Scientists v. United States Nuclear Regulatory Comm'n,* 824 F.2d 108, 113 (D.C.Cir.1987), and *International Union, United Automobile, Aero-*

### 1. The Pickle Amendment

■ The Pickle Amendment requires medical assistance to be provided to any individual, "in like manner and subject to the same terms and conditions" as are applied to SSI recipients, if that individual would also be eligible for SSI, were her OASDI COLAs disregarded in computing her income. On its face, then, the Pickle Amendment simply tries to assure that SSI recipients and individuals who would be eligible for SSI but for their OASDI COLA income are treated equally for purposes of Medicaid eligibility. In an SSI state, where SSI recipients automatically qualify for Medicaid, the Amendment thus ensures that COLAs will not cause an individual who had previously been eligible for both SSI and Medicaid suddenly to lose eligibility for both programs.

■ However, the Pickle Amendment is not limited to SSI states; it specifically states that "*each* such state plan" is subject to the requirements it sets forth. Yet exactly what requirements the Pickle Amendment imposes on § 209(b) states is unclear.[2] The Amendment mandates only that SSI recipients and "Pickle-status" indi-

viduals be treated "in like manner and subject to the same terms and conditions" in determining Medicaid eligibility. By its terms, the Amendment only requires COLAs to be disregarded in determining whether an individual would be eligible for SSI; it does not, however, mandate that such individuals actually *receive* SSI benefits. Nor does it mandate the disregard of COLAs in computing income for the purposes of Medicaid eligibility. Thus, the language of the Pickle Amendment is ambiguous as to the intended effect of the Amendment in § 209(b) states.

This ambiguity appears to be due to the fact that Congress' attention was focused on the situation involving the direct connection between loss of SSI and Medicaid, a connection that does not necessarily exist in § 209(b) states. The Senate Report describes in detail the kind of situation that the Amendment sought to redress:

> Present law provides for annual cost-of-living increases in payments under title II of the Social Security Act. Present law also provides for an increase in SSI benefits by the same percentage as is applicable for title II social security bene-

---

space and Agricultural Implement Workers v. Brock, 816 F.2d 761, 764–65 (D.C.Cir.1987), for this proposition. Plaintiffs' reliance on these cases is misplaced. The language plaintiffs cite from *Cardoza–Fonseca* is, at most, dicta; the Supreme Court in that case reaffirmed its holding in *Chevron*. See *Cardoza–Fonseca*, 480 U.S. at 447–48, 107 S.Ct. at 1221. The two cases plaintiffs cite from the D.C. Circuit are the only two cases which support plaintiffs' proposition, while numerous other cases in this Circuit apply the traditional *Chevron* standard. Moreover, the Supreme Court has recently questioned these cases:

> [O]ur decision demonstrates the continuing and unchanged vitality of the test for judicial review of agency determinations of law set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843 [104 S.Ct. 2778, 2781–2782, 81 L.Ed.2d 694] (1984). Some courts have mistakenly concluded otherwise, on the basis of dicta in *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446–448 [107 S.Ct. 1207, 1221–1222, 94 L.Ed.2d 434] (1987). See, e.g., *Union of Concerned Scientists v. NRC*, 824 F.2d 108, 113 (D.C.Cir.1987); *International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Brock*, 816 F.2d 761, 764–765 (D.C.Cir.1987); ....

*NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 133–34, 108 S.Ct. 413, 426, 98 L.Ed.2d 429 (1987) (Scalia, J., concurring) (joined by Rehnquist, White, and O'Connor, JJ.).

2. Although several courts have had an opportunity to interpret the Pickle Amendment in the context of litigation, none has faced the precise question at issue here—how the COLA disregard provision of the Pickle Amendment is to be applied in § 209(b) states. See *Lynch v. Rank*, 747 F.2d 528 (9th Cir.1984) (court interprets Pickle Amendment, in SSI state, to include all individuals who would be eligible for SSI "but for" OASDI COLA income, regardless of whether COLA was original cause of SSI ineligibility); *Ciampa v. Secretary of Health & Human Servs.*, 687 F.2d 518 (1st Cir.1982) (same interpretation of Pickle Amendment in SSI state). *But cf. Darling v. Bowen*, 685 F.Supp. 1125 (W.D.Mo. 1988), aff'd, 878 F.2d 1069 (8th Cir.1989) (district court applies Pickle Amendment provision requiring disregard of eligible disabled widow's and widower's benefit increases in benefits equally to § 209(b) state and SSI state; appellate court affirms under interpretation of Omnibus Budget Reconciliation Act of 1986, not Pickle Amendment).

fits. The intent of tying the two programs together for purposes of the benefit increase was to assure that SSI recipients would get the benefit of any social security benefit increase which became payable under the cost-of-living increase provision. An increase in social security benefits, therefore, does not ordinarily result in a decrease in SSI benefits.

However, because of the operation of the provision in the law for disregarding $20 a month of other income in determining the SSI benefit amount, there are some cases in which a social security benefit increase can have the effect of making individuals ineligible for SSI and also for medicaid benefits. For example, an individual in a State which does not supplement the basic Federal amount of $167.80 a month may still be eligible for $.80 in SSI payments even though he has a social security check of $187. This is because his social security check is considered as only $167 (applying the $20 disregard) for purposes of SSI. *Because he is eligible for an SSI payment, regardless of amount, he is automatically eligible for medicaid.* However, if in the future there were, for example, a 10 percent increase in social security benefits, his social security check would amount to $205.70. The SSI payment amount would increase to $184.60. The $20 disregard would still be effective, and his social security check for SSI purposes would be $185.70, or $1.10 above the SSI eligibility limit. Although the individual still has the advantage of a cash benefit increase, *the loss of SSI eligibility may carry with it a loss of medicaid.*

The committee bill would protect individuals in this situation by providing that no recipient of Federal benefits or State supplementary payments under the SSI program would lose eligibility for medicaid as the result of the operation of the cost-of-living benefit increase provision in title II. The committee provision would thereby insure that an increase intended to benefit the aged and disabled would not have inadvertent harmful effects.

S.Rep. No. 1265, 94th Cong., 2d Sess., at 27–28 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5997, 6021–22 (emphasis added). The example given by the Senate Report assumes an automatic link between SSI eligibility and Medicaid eligibility, a link which, as discussed above, is nonexistent in § 209(b) states.

Plaintiffs argue that the last paragraph in the above citation from the Senate Report supports their contention that it was Congress' intent, in enacting the Pickle Amendment, to eliminate *any* harmful effects on Medicaid eligibility that OASDI COLAs might have. While the last sentence of that paragraph supports the interpretation that Congress sought to avoid taking away with one hand what it was giving with the other, plaintiffs ignore the qualifying phrase "individuals *in this situation,*" a phrase which places the entire last paragraph within the context of the preceding example.

There is some dialogue from the Senate floor which lends support to the interpretation plaintiffs are urging. At the time the Senate was considering its own amendments to the House version of the Unemployment Compensation Amendments of 1975, of which the Pickle Amendment was one, a discussion arose concerning a different amendment. Senator Humphrey proposed that the Senate include an amendment requiring states which supplement the SSI program to pass along federal cost-of-living increases directly to the beneficiaries, rather than using those federal increases as an opportunity to reduce their own contributions to SSI, as they had been doing. 122 Cong.Rec. 33,271 (1976). The ensuing debate over that proposal revealed Congress' concern over the states' continuing attempts to reduce their share of welfare contributions. Senator Nelson pointed out:

We did not anticipate that the States would simply reduce their contribution for taking care of the blind and the aged as Federal money came in. Our objective was, as costs went up, the Federal money would go on top of what the States were doing. What happened is

that a number of States have turned this program into another general revenue sharing program, and we had no intent of making it a general revenue sharing program. We had the intent of helping the blind, the aged, and disabled.

*Id.* Senator Humphrey's proposal was eventually shelved for a later bill; the debate concluded with Senator Long's lament, "every time we provide more help for the aged people by providing an increase in their SSI payments, those States look for the chance to reduce the State contribution." *Id.* at 33,272.

The exchange on the Senate floor suggests that Congress was concerned, in a related area, that cost-of-living increases not be used as an excuse for states to reduce their contribution levels to welfare programs. This is precisely what some § 209(b) states are doing with the COLAs provided by OASDI: they are using them to reduce the amount of Medicaid payments they will have to make. However, the Senate debate does little more than increase the ambiguity surrounding the application of the Pickle Amendment to § 209(b) states. The Senators were not specifically debating the Pickle Amendment in this exchange; thus, the Court must be wary of applying those comments outside their obvious context.

In light of this review of the language and legislative history of the Pickle Amendment, the Court cannot conclude that Congress made its intent clear regarding how the Amendment was to be applied to § 209(b) states. In fact, the parties have, in their supporting memoranda, both cited the *same* language from the Senate report to support completely opposite interpretations. This reinforces the Court's conclusion that the Amendment is subject to more than one interpretation.

Having determined that Congress' intent on the question at issue is unclear, the Court must, under the second prong of *Chevron,* consider whether the Secretary's regulation is a reasonable interpretation of the Pickle Amendment. In light of the focus in the Pickle Amendment on SSI states, as well as the original purpose underlying the § 209(b) option, the Court finds that the regulation is reasonable and consistent with the statute's purpose. The regulation does not require § 209(b) states to include COLAs in calculating income for purposes of Medicaid eligibility; it merely *allows* them to do so. Thus, 42 C.F.R. § 435.135(c) preserves the flexibility Congress originally intended the states to have under § 209(b). Nothing in the language of the Pickle Amendment suggests that Congress intended to cut back on this flexibility in § 209(b) states. The Secretary's existing regulation is entirely consistent with Congress' purpose, when it enacted § 209(b), of giving states the option to use more restrictive criteria in determining financial eligibility for Medicaid. While this Court may have preferred the Secretary to implement a different interpretation of the Pickle Amendment that would not have allowed states to use COLAs as a pretext for decreasing Medicaid obligations, "a court may not substitute its own construction of a statutory provis[i]on for a reasonable interpretation made by the administrator of an agency." *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782.

### 2. The Medicare Catastrophic Coverage Act of 1988

Plaintiffs also argue that 42 U.S.C. § 1396a(r)(2) prevents the Secretary from promulgating a regulation such as § 435.-135(c). Section 1396a(r)(2) provides:

The methodology to be employed in determining income and resource eligibility for individuals under subsection ... (f) of this section [§ 209(b)] ... may be less restrictive, and shall be no more restrictive, than the methodology—

(i) in the case of groups consisting of aged, blind, or disabled individuals, under [the SSI program] ....

42 U.S.C. § 1396a(r)(2) (1988). Plaintiffs interpret this statutory provision to require § 209(b) states to disregard OASDI COLAs in determining Medicaid eligibility.

However, the plain language of § 1396a(r)(2) does not support plaintiffs' interpretation. Under the terms of § 1396a(r)(2), a § 209(b) state may not use

a more restrictive "methodology" in determining eligibility for Medicaid than is used to determine eligibility for SSI. The fact is that states *may* and currently *do* include OASDI COLAs in determining *SSI* eligibility. The Pickle Amendment does not mandate states to disregard COLAs in determining *SSI* eligibility; it requires states to treat individuals who have become ineligible for SSI as a result of COLAs in the same way as it treats SSI recipients for purposes of Medicaid eligibility. Thus, the Pickle Amendment seeks to preserve these individuals' *Medicaid* benefits, not their *SSI* benefits. In fact, the Pickle Amendment implicitly acknowledges that COLAs may be used to render ineligible someone who had previously been eligible for SSI.

States are thus allowed to use OASDI COLAs in determining SSI eligibility, and they do use them to render certain individuals ineligible for *SSI*. All § 1396a(r)(2) requires is that states use an equally or less restrictive "methodology" in determining Medicaid eligibility. The Secretary's regulation comports precisely with this requirement: it allows § 209(b) states either to include or disregard COLAs in calculating Medicaid eligibility. The Court finds § 435.135(c) entirely consistent with the mandate of § 1396a(r)(2).

### B. Is the Regulation Arbitrary and Capricious?

█ Plaintiffs also challenge the Secretary's regulation as arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A) (1988). In reviewing the regulation, the Court must consider whether it "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Adams House Health Care v. Sullivan,* 895 F.2d 767, 770 (D.C.Cir.1990) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)) (internal quotations omitted). Applying this standard, the Court cannot agree with plaintiffs.

█ The Court has already determined that the Secretary's regulation is a reasonable interpretation of the Pickle Amend-

ment. Moreover, the Secretary argues that, in promulgating the challenged regulation, he considered the matters raised in this case and "followed a fully-reasoned course" in adopting the approach set out in the regulation. During the notice and comment period, the Secretary received at least one comment suggesting that the Pickle Amendment requires individuals who lose SSI due to COLAs to be treated "in a like manner and subject to the same terms and conditions as a person who remains eligible for SSI," and that a regulation allowing states to include COLAs in determining Medicaid eligibility would therefore violate the terms of the Amendment. The Secretary's response defended the proposed interpretation:

> ... [The Pickle Amendment] does not provide that a person who loses SSI eligibility due to a cost-of-living increase will be treated in a like manner and subject to the same terms and conditions as a person who remains eligible for SSI. Rather, the statute provides that '*medical assistance* ... shall be provided ... in a like manner and subject to the same terms and conditions as are applicable (to SSI recipients).' ...

> [Our] position is consistent with our view that [§ 209(b)] permits States to use their criteria for financial eligibility for medicaid for the aged, blind, and disabled which were in effect under an approved plan on January 1, 1972, or to use criteria which are less restrictive than the 1972 standards..... Since [the Pickle Amendment] permits States which use SSI criteria for determining medicaid eligibility to disregard OASDI cost-of-living increases in a limited manner, our regulation permits [§ 209(b)] States to disregard these cost-of-living increases only to the same extent as the "SSI" States.

43 Fed.Reg. 44,529–30 (1978). The Secretary reiterated this interpretation of the Pickle Amendment in response to comments to revised regulations in 1986. *See* 51 Fed.Reg. 12,325–26, 12,328 (1986). Plaintiffs can point to no inconsistency in these comments, nor do they dispute that

the Secretary supported his interpretation with reasoned arguments.

The Court can find no "clear error of judgment" in the Secretary's interpretation of the Pickle Amendment. Rather, the rulemaking record reflects the Secretary's consideration of some of the very issues being litigated here, as well as a consistency between his interpretation of the Amendment at the time of promulgation of the regulation and his current interpretation. Thus, the Court concludes that the Secretary's regulation is not arbitrary and capricious.

## CONCLUSION

Having reviewed the language and legislative history of the Pickle Amendment, the Court finds the Secretary's regulation a reasonable interpretation of that statutory provision. Moreover, 42 C.F.R. § 435.-135(c) is consistent with § 1396a(r)(2) of the Medicare Catastrophic Coverage Act. Finally, the Court finds that the regulation is not arbitrary and capricious. Thus, the Court hereby denies plaintiffs' motion for summary judgment and grants defendant's motion for summary judgment.